**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**
_____

PHILLIP M. ARMIJO,

        Plaintiff,

        v.                             Civ. No. 17-CV-00574-WJ-SCY

SANTA FE COUNTY,
WARDEN DEREK WILLIAMS,
Individually and in his Official Capacity,
CITY OF SANTA FE,
Santa Fe Police Officer ANTHONY CURREY,
Individually and in his Official Capacity.

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT 3 AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNT 3**

        THIS MATTER comes before the Court upon City Defendants' Motion for Summary Judgment as to Count 3 of Plaintiff's Complaint Based on Qualified Immunity **(Doc. 32, filed 11/22/17)** and Plaintiff's Cross Motion for Summary Judgment Against Officer Currey **(Doc. 40, filed 1/8/18)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' Motion is well-taken and, therefore, is **GRANTED**.

## BACKGROUND

        Plaintiff Phillip Armijo ("Plaintiff") alleges that the City of Santa Fe and Officer Anthony Currey (collectively "City Defendants" or "Defendants") violated federal constitutional law and state tort law during an incident that occurred on March 8, 2016, which Plaintiff contends resulted in his false arrest by Officer Currey ("Defendant Currey"). On that day, Defendant Curry and his fellow officers responded to a 911-call about a domestic disturbance in

the City of Santa Fe. Defendant Currey asserts that he relied upon information furnished by the dispatch center that a) was provided to him by Officer Aikman that caused him to believe there was an arrest warrant in the name of Plaintiff Phillip Armijo, and b) after discovering the arrest warrant was in the name of John Armijo, caused him to believe the names Phillip Armijo and John Armijo were aliases. After arresting Plaintiff, Defendant Currey transported Plaintiff to the Santa Fe County Adult Detention Center, which was under the administration of Warden Derek Williams. Plaintiff was held until March 10, 2016, when he was released from custody upon a court order recognizing that Plaintiff was Phillip Armijo, not John Armijo, who was actually Plaintiff's brother.

Plaintiff asserts that Defendant Currey did not have probable cause for the arrest because the arrest warrant upon which Defendant Currey relied named John K. Armijo, not Phillip M. Armijo. Plaintiff further contends that the arrest was based on an unsubstantiated and unreasonable assumption that the name was an alias. Plaintiff asserts that as a result of his false arrest, he suffered personal injuries and extreme emotional distress.

Plaintiff brought state law and 42 U.S.C. § 1983 claims against Defendant Curry (in his individual and official capacities), the City of Santa Fe, Warden Derek Williams (in his individual and official capacities), and the County of Santa Fe. Doc. 1, filed 5/22/17. The Court entered a Memorandum Opinion and Order dismissing the § 1983 claim against Warden Derek Williams and the County of Santa Fe. Doc. 24, filed 9/7/17. Now before the Court on these cross-motions for summary judgment is Plaintiff's claim against the City Defendants under Count 3, for violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983.[1]

---

[1] According to the parties' briefs (Doc. 32, Doc. 40, Doc. 46), none of the parties appear to argue that the claim of false imprisonment applies to the City Defendants. As the issue of false imprisonment has not been briefed by any of the parties for these motions, and the briefs instead revolve around the claim of false arrest as a violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count 3), the Court addresses only Count 3 at this time.

**DISCUSSION**

## I.      Underlying Facts

At this stage of summary judgment, the Court views the facts in the light most favorable

to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City*

*of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The following facts are either undisputed or

taken in the light most favorable to Plaintiff.  At this stage, "the judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Although

many of the parties' attempted "disputes" of the facts are disingenuous, the Court addresses them

in footnotes throughout the following facts section. The Court also addresses the admissibility of

some exhibits for the summary judgment record, either in footnotes or after the facts section.

### A.      The Arrest Warrant

On March 8, 2016, officers from the Santa Fe Police Department were dispatched to a

domestic disturbance at 908 Osage Avenue in the City of Santa Fe. While Defendant Currey,

Officer Aikman, and Officer Durham were responding to the call, they received a Computer-

Aided Dispatch ("CAD") Call Information Report that contained information, including that the

caller was Plaintiff and that Plaintiff was reporting his sister for property destruction. Doc. 32-1,

**Ex. A**: CAD Call Information Report ("CAD report"). The CAD report did not contain any

information about an arrest warrant. Once they arrived at 908 Osage Avenue, the officers

obtained the identification information from the two people at the scene, who were Plaintiff and

---

Although Defendants replied out of caution as if Plaintiff's motion included Count 1 (state law claim for false arrest), the Court does not address Count 1 in this opinion. The City Defendants and Plaintiff have filed additional cross-motions for summary judgment that encompass Count 1. *See* Doc. 45, filed 1/31/18; Doc. 48, filed 2/23/18. The Court also notes that Plaintiff did not file a Reply brief to his Cross Motion for Summary Judgment, which would have been due on February 16, 2018. *See* Doc. 42, Order Regarding Briefing for Motions for Summary Judgment, filed 1/10/18; D.N.M.LR-Civ. 7.4(a).

his sister. The Plaintiff's identification card[2] showed that his name was Phillip Armijo and the picture on the card looked like the man presenting the card. Defendant Currey believed it was an accurate identification card from New Mexico. Doc. 32-5, **Ex. E**: Identification card for Phillip Armijo.

Officer Aikman relayed the information to the dispatch center (Santa Fe Regional Emergency Communications Center, "RECC" dispatch).[3] Doc. 32-2, **Ex. B**: audio recordings between Officer Aikman and dispatch.[4] The dispatcher asked if Officer Aikman was "10-12 with Phillip Armijo" and stated she had a warrant for him "in hand and confirmed." *Id.* at "4 19.55.20" and "6 19.55.29." Officer Aikman asked what the warrant was for, and dispatch reported that there was an arrest warrant for Phillip Armijo for a failure to appear in court for the charge of driving under the influence, without bond. *Id.* at "7 19.55.36" and "8 19.55.47." Officer Aikman then informed Defendant Currey that dispatch had a warrant for a failure to appear out of district court for Phillip Armijo.[5] Defendant Currey asked Officer Aikman if the

---

[2]     Although the parties inconsistently refer to the identification card as a valid driver's license, the card has the label "Identification Card" in the upper right corner, and it does not reflect any indication that it is a New Mexico driver's license. This fact does not change the Court's reliance on the identification card.

[3]     Defendant submitted two audio recordings to support this paragraph of facts. Doc. 32-2, Ex. B: transcript and audio recording of RECC call with Officer Aikman; Doc. 32-9, Ex. I: audio recording of 911-call. Plaintiff attempts to dispute the facts in this paragraph relating to the audio recordings between dispatch and Officer Aikman on the grounds that the audio recordings are unauthenticated and in inadmissible form, which the Court rules on in Part I.D., *infra*. Furthermore, while Plaintiff complains that the recordings are "fragmented and unintelligible," the Court finds that the recordings are sufficiently understandable to support these facts. Plaintiff did not otherwise dispute the substance of these facts or raise an objection on other grounds to the admissibility of the contents of these recordings. Therefore, the Court will treat these facts as undisputed. *See* D.N.M.LR-Civ. 56.1(b) (requiring the responding party to "specifically controvert[]" the movant's fact, or else the party admits the fact).

[4]     The Court notes that the recording "1 19.51.21" confirms the speaker is "297," which the CAD report identifies as Officer Aikman. Doc. 32-1: Ex. A.

[5]     In response to Defendants' Fact No. 11 that "Officer Aikman told Officer Currey about the bench warrant to arrest Phillip Armijo" (Doc. 32, ¶ 11), Plaintiff responds that he "admits Officer Currey testified this information was given to him. However, it was proven to be false and incorrect by Officer Currey's own investigation." Doc. 40, ¶ 11.  The Court refuses to indulge in Plaintiff's attempt to obscure the facts by combining the admissions/denials section with Plaintiff's own factual assertions for his cross-motion. Plaintiff never attempts to refute, question, or object to the fact that Officer Aikman conveyed this information to Defendant Currey, and it therefore remains

warrant was confirmed and Officer Aikman asserted that "dispatch had the warrant in hand." Doc. 40-2, **Ex. 2**: Officer Currey's Memorandum. Defendant Currey arrested Plaintiff on the warrant.[6] Defendant Currey arrested Plaintiff at 908 Osage Avenue in Santa Fe, which is the address listed on Plaintiff's identification card. Doc. 32-1, Ex. A; Doc. 32-5, Ex. E. 908 Osage Avenue is also the last known address listed for John Armijo on the arrest warrant. Doc. 32-4, **Ex. D**: Arrest warrant for John Armijo.

In his Memorandum dated March 9, 2016, Defendant Currey provides the following account of his understanding of the arrest warrant at the time of arrest:

> As I was speaking with Mr. P. Armijo Officer Durham was speaking with the wife, and Officer Aikman took Mr. P. Armijo's license from me to run him through dispatch. When Officer Aikman returned he stated Mr. P. Armijo had a warrant, I asked him if it was confirmed and he stated dispatch had the warrant in hand. I informed Mr. P. Armijo he had a warrant and Officer Aikman informed me it was for a failure to appear out of District Court.

Doc. 40-2, Ex. 2; Doc. 32, ¶ 23 (referencing Defendant Currey's Memorandum).

At his deposition, the following questioning took place regarding the memorandum Officer Currey drafted on March 9, 2016:

> Q:    And then it says, "When Officer Aikman returned he stated Mr. P. Armijo had a warrant." What did you know about the warrant?
>
> A:    At the time when he first told me that, he just let me know that Phillip Armijo had a warrant. It wasn't until after we left the residence, I kind of asked him what it was for.

---

undisputed that Officer Aikman told Defendant Currey that the arrest warrant was for Plaintiff, even in the most considerable light for Plaintiff. *See* D.N.M.LR-Civ. 56.1(b) (requiring the responding party to "specifically controvert[]" the movant's fact, or else the non-moving party admits the fact). This undisputed fact is further supported by evidence submitted by both parties, including Defendant Currey's Memorandum dated March 9, 2016, which Plaintiff submitted in his Doc. 40-2 as Ex.2, and Defendant Currey's deposition testimony. *See* Doc. 40-2, Ex. 2; Doc. 32-6, Ex. F. at 17:15–25. The Court notes that Plaintiff has not raised any objection to the admissibility of any of Officer Aikman's statements to Defendant Currey.

[6]    City Defendants dispute Plaintiff's assertion that "Officer Currey did not have any reason to believe Phillip Armijo had committed any crimes." Doc. 40, ¶ 7. The Court need not delve into this "dispute" because what Defendant Currey believed constituted grounds for arresting Plaintiff is the substantive legal issue for false arrest, and thus cannot be cast as a fact. The insertion of legal argument into the undisputed facts section is improper.

Q:      Okay. So Officer Aikman says Phillip Armijo had a warrant. Did he say it was Phillip Armijo or for John Armijo?

A:      He said it was for Phillip Armijo.

Doc. 32-6, **Ex. F**: Defendant Currey's Deposition, at 17:15–25.

Defendant Currey then left the location to transport Plaintiff to Santa Fe County Adult Detention Center. On the way to the Detention Center, Defendant Currey stopped at the RECC to retrieve a copy of the arrest warrant for Phillip Armijo. At RECC, dispatch gave Defendant Currey an arrest warrant that named John Armijo. Doc. 32-4, Ex. D. Defendant Currey realized this arrest warrant was in the name of John Armijo and not in the name of Phillip Armijo.

### B.      The RECC Returns

The dispatcher at RECC also provided Defendant Currey with two reports, which the parties refer to as "returns."[7] These "returns" contained personal identifying and criminal history information for both John K. Armijo and Phillip M. Armijo, and were promulgated through the electronic system ("NCIC") that RECC uses to check for warrants.[8] Defendant Currey testified that of the two returns, only the return for John Armijo had a photograph attached to it.

---

[7]      Defendants' Fact No. 14 states: "When Officer Currey arrived at RECC, dispatch gave him a copy of the warrant and two 'driver's license returns.'" Doc. 32, ¶ 14. In his response, Plaintiff denies that this fact is undisputed, stating: "There is no evidence a 'return' is a 'type of driver's license report' or that it has any reliability, accuracy, or can be used as a lawful basis for arrest." Doc. 40, ¶ 14. Plaintiff's reason for denying Defendants' Fact No. 14 is a two-part objection. First, it is unnecessary to rule on how the parties characterize or label the reports, whether as "driver's license reports" or otherwise. It is material that the parties agree about the contents of the reports, the fact that Defendant Currey received the reports from the dispatcher at RECC, and the fact that Defendant Currey reviewed the reports—which the parties do agree on. *See* Doc. 32, ¶¶ 14, 18–20; Doc. 40, ¶¶ 15–16. Second, Plaintiff's objection that there is no evidence that the reports have "any reliability, accuracy, or can be used as a lawful basis for arrest" goes to Plaintiff's legal argument, not the facts. Finally, the Court notes that Defendants have not produced these two reports for their Motion, and Plaintiff did not raise an objection to the lack of production or to the form or authenticity of these documents, or on any other grounds.

[8]      Defendants cite to Doc. 29, Defendant Santa Fe County's Motion for Summary Judgment on Counts 2, 5, 7 and 9, Ex. 4: Affidavit of Ken Martinez. Plaintiff does not object to reference to this affidavit. The affiant, the director of the RECC, states: "I ran a warrants check through our databases inputting the name of 'Philip [sic] M. Armijo.' I determined that inputting the name of Phillip M. Armijo produces information that Phillip M. Armijo is also known as John K. Armijo and that John K. Armijo has various alias names including Philip M. Armijo."

Specifically, Plaintiff states: "Although he [Defendant Currey] got two 'returns' from dispatch, John and Phillip Armijo each had their own individual names, dates of birth, social security numbers, and none of that information 'overlapped' one another." Doc. 40, ¶ 15. Defendant Currey looked at the two reports, compared the photo of John K. Armijo to the photo of Phillip M. Armijo on his N.M. drivers' identification card and to the person in his custody, and determined, based on the information provided from RECC, that Phillip M. Armijo was an alias for John K. Armijo. Doc. 32, ¶ 20. The arrest warrant showed John K. Armijo's height as 5'3", weight as 150 lbs., and hair and eye color as brown. Plaintiff's identification card showed his height as 5'5", weight as 160 lbs., and eye color as brown. Officer Currey was not told anything by dispatch to indicate Phillip Armijo had used John Armijo as an alias.

When asked at his deposition why he continued to execute the arrest warrant for John Armijo on Phillip Armijo after reviewing the warrant and the RECC returns, Defendant Currey testified that:

> At that time because of the second return, generally, if dispatch pulls up a return for somebody and sees—maybe usually an a/k/a will pop up, which generally means that perhaps that other name and other information had been used in the past, which is probably why it popped up in the first place. I don't know for sure, but usually that's the case.

> And I'm looking at these and I see the same address, the same last name. It looks similar, in my opinion, and the criminal histories looked—they were saying they both had DUI offenses, they both had failure to pay for child support, so I believed that it was an alias, which is why I proceeded with the warrant.

Doc. 32, ¶ 20 (citing Doc. 32-6, Ex. F at 21:19–22:8). When asked what he meant when he stated he "believed it was an 'alias,'" Defendant Currey testified:

> I believed that Phillip Armijo had at some point in time, used John Armijo's name and information in the past. And I believed that that John—this warrant for John Armijo was indeed for Mr. Phillip Armijo.

Doc. 32, ¶ 20 (citing Doc. 32-6, Ex. F at 22: 9–14). Defendant Currey further testified that

having the returns—having both returns kind of pop up at the same time, and speaking with the dispatchers, it was kind of—it was kind of odd, but usually when that happens, it's because there's been an alias used in the past.

Doc. 32-6, Ex. F at 23:11–16. The parties also agree that "Officer Currey believed the arrest warrant for John Armijo was for Phillip Armijo." Doc. 40, ¶ 18. During the arrest, Defendant Currey did not "know John Armijo existed" and he thought Phillip and John were the same person. Doc. 32, ¶ 21.

### C. The Detention Center

Defendant Currey left the RECC and transported Plaintiff to the Santa Fe County Adult Detention Center for incarceration. Plaintiff was booked into the Santa Fe County Adult Detention Center as "John K. Armijo, a/k/a Phillip Armijo." Doc. 32 at ¶ 24 (citing Doc. 29: Booking records, at 8, 12). Defendant Currey did not question Plaintiff about his identity or possible use of aliases.[9] At his deposition, Plaintiff testified that he did not remember any conversation with Officer Currey, or with any of the booking officers at the Detention Center. Doc. 32-3, **Ex. C**: Armijo Deposition, at 58:15–17, 59:2–13.

Upon complaint by Plaintiff that he was arrested on the bench warrant for his brother, John Armijo, the City of Santa Fe Police Department and the Detention Center investigated and concluded that this was the case. See Doc. 40-2, **Ex. 2** at 4, Sergeant Kyle Zuments Memorandum, at ¶¶ 3–4. Pursuant to a court order issued on March 20, 2018, Plaintiff was released from the Detention Center. Doc. 40-3, **Ex. 3**: Order for

---

[9] The parties appear to dispute how Plaintiff "communicated" with Defendant Currey while waiting to be processed at the Detention Center. As Plaintiff testified that he does not remember the conversation he had with Defendant Currey, the Court cannot weigh the statements of Defendant Currey against Plaintiff's regarding what Plaintiff said. It is not material, however, whether Plaintiff verbally communicated that he was not John Armijo (which Defendants maintain Plaintiff failed to do). Under the substantive law, discussed *infra* Part III.A, whether Plaintiff protested would not change the Fourth Amendment analysis under *Hill v. California*. It is material that Plaintiff at least presented his identification reflecting his name, which all parties agree happened.

Release (stating Plaintiff "was mistakenly arrested on an Outstanding Bench Warrant that was issued for his brother, John Armijo").

### D. Evidentiary Issues

While the Court dealt with some of the objections to exhibits and undisputed facts in the footnotes of the prior section, plaintiff made several objections to improper support of the undisputed facts that require more discussion.[10]

### 1. Audio Recordings and Supporting Affidavit

First, Plaintiff objects to Defendants' submission of two exhibits for the summary judgment record: Exhibit B (disc and transcript of audio call between Officer Aikman and dispatch) and Exhibit I (audio recording of 911-call between Plaintiff and dispatch). The Court interprets Plaintiff's objection to be to the form of the recordings and the lack of authentication in Exhibits B and I, including the lack of an affidavit. In response, Defendants submitted the affidavit of Nick Martinez, who is the records custodian for RECC. Doc. 46-1, Ex. J.[11]

### i. Authenticity

As the Tenth Circuit has noted, "[w]e do not require an affidavit to authenticate every document submitted for consideration at summary judgment." *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Federal Rule of Evidence 901(b)(4) provides that a party's exhibit for summary judgment "might be

---

[10]    Plaintiff disputed certain of Defendants' factual assertions on grounds involving Defendants' submitted exhibits. Pursuant to Fed. R. Civ. P. 56(c)(2), the Court interprets this as Plaintiff objecting that a fact is not supported by admissible evidence.

[11]    Defendants also argue that the recordings are admissible as records of a regularly conducted activity and as public records. The Court notes that Fed. R. Evid. 803 addresses hearsay objections, which Plaintiff does not raise, regarding Exhibits B and I or otherwise. *See* discussion *infra* Part I.D (explaining that the Court will not rule on hearsay content *sua sponte*).

sufficiently authenticated by taking into consideration the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *See Mohawk*, 577 F.3d at 1171 (ruling that the district court abused discretion by "categorically disregarding" exhibits without affidavits, instead of considering authentication under Rule 901).

The audio recordings in Exhibits B and I bear indicia of reliability that these exhibits are in fact what Defendants claim they are. In Exhibit B, the use of short-hand radio vernacular, intermittent sounds of static, and the resulting content is consistent with Defendants' assertion that the recording is the radio traffic between Officer Aikman and the dispatch center. Doc. 32-2, Ex. B.[12] Regarding Exhibit I, the Court notes that the CAD report corroborates much of the 911 audio recording between the dispatcher and the caller, including the caller, the address, and the date and time of the call. Doc. 32-9, Exhibit I; Doc. 32-1, Ex. A. Given the characteristics and corroboration of Exhibits B and I by Exhibit A (CAD report), the Court finds that these exhibits are authentic for the purpose of Defendants' motion for summary judgment.

Additionally, the Court addresses the affidavit of Nick Martinez, the custodian of records at RECC, which supports the authenticity of Exhibits B and I. Defendants submitted this affidavit as part of the reply portion of their combined brief. Doc. 46-1, **Ex. J**. The general rule is that "[w]here a reply contains new material or argument, courts must either refrain from relying on the new material or argument in ruling on the motion, or permit a surreply." *See Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159 (10th Cir. 1998). As is the case here, however, the Federal Rules of Civil Procedure allow that a court may give a party "an opportunity to properly support or address the fact" to which the opposing parties objects on grounds of insufficient support. Fed.

---

[12] The Court does not consider the transcript that Defendants submitted with the audio recording in Exhibit B. Defendants offer no verification of the authenticity of the transcript, which does not bear any of indicia of reliability under Fed. R. Evid. 901 (no discerning characteristics, letterhead or insignia, or internal patterns).

R. Civ. P. 56(e)(1); *see also* Fed. R. Civ. P. 56(e)(1) advisory committee's note to 2010

amendment ("In many circumstances this opportunity will be the court's preferred first step.").[13]

In this instance, the affidavit from the custodian of records at RECC only responds to

Plaintiff's objection to the authenticity of Exhibits B and I. The affidavit does not present any

new arguments to the Court for consideration, and directly addresses the source and creation of

the audio recordings, which Plaintiff had raised in its objection. Rule 56(e)(1) allows the Court to

consider Defendants' supplemental affidavit. Doc. 46-1, Ex. J.

The Court finds that pursuant to Fed. R. Evid. 901(b)(4), the exhibits are authentic for the

purpose of supporting Defendants' Motion for Summary Judgment, and the affidavit of Nick

Martinez shows that Defendants would be able to authenticate these recordings at trial. Plaintiff's

mere assertion is insufficient to persuade the Court otherwise.

### ii.      Form

Next, the Court considers Plaintiff's objection that the form of the audio recordings is

inadmissible. Rule 56 allows a party to "object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The law in the Tenth Circuit is clear: "The requirement is that the party submitting the evidence

show that it will be possible to put the information, the substance or content of the evidence, into

an admissible form." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (citation omitted),

*aff'd in part, rev'd in part* 2016 U.S. App. LEXIS 20270 (10th Cir. Nov. 8, 2016). Objections to

form often arise at the summary judgment stage regarding the use of hearsay content because

parties may use affidavits "despite the fact that affidavits are often inadmissible at trial as

hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible

---

[13]      Additionally, Plaintiff did not move for leave to file a surreply or to strike the affidavit.

form." *Id.* at 1232 ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." (citation omitted)).

Plaintiff in this instance, however, has failed to identify any particular ground on which the Court can rule. Without providing a more concrete description, the Court cannot infer "hearsay" from "form," if that is what the Plaintiff intended. Here, Plaintiff's failure to expressly raise or articulate even one single hearsay objection prevents this Court from ruling on hearsay grounds for Plaintiff's objection to the recordings. The Court relies upon *Bird v. West Valley City*, 832 F.3d 1188 (10th Cir. 2016), in which the Tenth Circuit noted that because neither party raised an objection to admission of the evidence on the basis of hearsay, the court would "not disregard any evidence *sua sponte*." 832 F.3d at 1194 n.1 (citation omitted). As the Tenth Circuit distinguished in *Bird*, the generalized rule against hearsay in the content of the materials used to support a movant's motion for summary judgment *presupposes* a proper objection on the grounds of hearsay, so that the hearsay objection is fairly in front of the court. *See also Talavera v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013) (ruling that because "the defendants did not move to strike [the] expert report from consideration below, . . . we see no reason to depart from the general rule that an evidentiary objection not raised in the district court is waived on appeal").

Furthermore, opining on admissibility of arguable hearsay statements *sua sponte* without a proper objection from Plaintiff would risk the Court abandoning its role as a neutral decision-maker. *See Bird v. Regents of N.M. State Univ.*, 619 Fed. Appx. 733, 740 (10th Cir. 2015) (unpublished) (explaining that the district courts "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it" (citation omitted)). While Defendants readily provided an affidavit and responded to Plaintiff's objections with citations to hearsay exceptions,

the Court will not rule on a hearsay objection that was never raised by Plaintiff. Without further particularity, the Court finds that Plaintiff's complaint of "inadmissible form" is too ambiguous to provide the Court with firm grounds on which to rule.

### 2.    Booking Records of John Armijo

Next, the Court examines Plaintiff's objection to the booking records of John Armijo submitted in Defendants' **Exhibits G, H1, H2,** and **H3**. Docs. 32-7, 32-8. Defendants assert that the booking records support Defendant Currey's conclusion that the names were aliases by demonstrating the similarity in appearance and how the NCIC records can reflect multiple names. Plaintiff objects on the ground that "Officer Currey never testified that he had any of this information at the time of arrest."[14] Doc. 40. The Court interprets this objection to be to relevancy, as in the exhibits are not of consequence to the Court's examination of the reasonableness of Defendant Currey's conclusion that the names were aliases.

The Court agrees with Plaintiff that Exhibits G and H are not relevant because Defendants have provided no evidence that Defendant Currey considered the contents of these exhibits when forming his conclusion about the use of an alias. *See* Fed. R. Evid. 401. The facts do not indicate that Defendant Currey accessed these booking records at the time of forming his belief that Plaintiff was the person sought by the arrest warrant, as required by *Hill v. California*, 401 U.S. 797, 802 (1971), *infra*. While the Court now has the benefit of hindsight, the Fourth Amendment reasonableness analysis can only account for the circumstances that existed at the time of the arrest. *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). Defendant Currey

---

[14]    Plaintiff's full objection also includes authenticity and form, but the Court does not examine these objections because of the ruling under Fed. R. Evid. 401. Thus, the Court does not consider the affidavits submitted in Exhibits K and L, as these affidavits address the authenticity, creation, and storage of the booking records. *See* Doc. 46-2, **Ex. K**: Second Affidavit of Aaron C. Garcia; Doc. 46-3, **Ex. L**: Affidavit of AnnaMarie C. Bowen.

relied on many other sources and inferences for his conclusion that the arrest warrant was intended for Plaintiff; he did not rely, however, on the records submitted in Exhibits G and H.

The Court will not consider Exhibits G and H in the summary judgment record, or the facts asserted in ¶¶ 26–31 of Defendants' Motion. Doc. 32. Additionally, the Court will not weigh the evidence at the summary judgment stage, and thus the Court cannot use these exhibits to determine whether the Plaintiff's physical appearance was sufficiently similar to his brother's to support Defendant Currey's decision.

### 3. Declaration of Defendant Currey

As the Court explained above, the general rule is that "[w]here a reply contains new material or argument, courts must either refrain from relying on the new material or argument in ruling on the motion, or permit a surreply." *See Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159 (10th Cir. 1998). Unlike the affidavit above, however, this affidavit comes from Defendant Currey, and he makes a number of factual assertions that address disputes by Plaintiff. Doc. 46-4, **Ex. M**. Defendant Currey's affidavit is not limited in responding only to issues of insufficient support of a fact, such as authenticity or form, as was the case with the recordings. The same rule that allowed the Court to consider the RECC custodian's affidavit submitted in the reply brief (Doc. 46-1, Ex. J) does not allow the Court to consider Defendant Currey's affidavit. *See* Fed. R. Civ. P. 56(e)(1). While Plaintiff did not file a motion to strike the affidavit, the Plaintiff has had no opportunity to respond to it, and it would be improper to consider Defendant Currey's affidavit for the summary judgment record. Doc. 46-4, Ex. M.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is proper if the pleadings and admissions, answers to interrogatories,

depositions, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted). A fact is material if "under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Labs.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citation omitted). A dispute is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Most importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (citation omitted).

Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted). As the Supreme Court emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott*, 550 U.S. at 380 (citation and quotation

marks omitted). Finally, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

### B. Qualified Immunity

Defendants have asserted the defense of qualified immunity, which "is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation marks and citations omitted). When a defendant raises a claim of qualified immunity in his motion for summary judgment, "the plaintiff must show the defendant's actions violated a specific statutory or constitutional right, and the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000) (quoting *Albright*, 51 F.3d at 1534). The trial court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). In the Fourth Amendment context, officers are immune "from suit for damages if 'a reasonable officer could have believed [the plaintiff's] [arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

### III. Analysis

As detailed below, the Court concludes that Defendant Currey is entitled to qualified immunity because Plaintiff has failed to show that Defendant Currey lacked probable cause for the arrest and that his decision was unreasonable. Additionally, the Court finds that even if

Defendant Currey had lacked probable cause for the arrest, Plaintiff's right was not well-established on March 8, 2016. Defendant Currey is therefore immune from a suit for damages pursuant to the doctrine of qualified immunity, and he is entitled to summary judgment. The Court further finds that Plaintiff has not carried its burden to demonstrate that the City of Santa Fe is liable under §1983.

A.     **Plaintiff's § 1983 Claim Against Defendant Currey for Violation of Fourth Amendment**

1.     **Defendant Currey is entitled to qualified immunity because Plaintiff has not shown Defendant Currey violated the Fourth Amendment.**

Regarding the first prong of the qualified immunity inquiry in this case, "[t]o defeat qualified immunity on his wrongful arrest claim, Plaintiff ha[s] the burden at summary judgment to assert a violation of his Fourth Amendment rights." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). This part of the qualified immunity inquiry is thus a constitutional examination.

An arrest "must be based on probable cause to believe that a person committed a crime . . . ." *Maresca v. Bernalillo Co.*, 804 F.3d 1301, 1308 (10th Cir. 2015) (citation omitted). To effectuate a valid arrest, "probable cause exists only if, in the totality of the circumstances, the facts available to the officers at the moment of the arrest would warrant a [person] of reasonable caution in the belief that an offense has been committed." *Id.* at 1310 (citation and quotation marks omitted). As the Tenth Circuit has noted, "[w]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)). The doctrine of qualified immunity allows that "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* (citation and quotation marks omitted).

> i. **Defendant Currey reasonably relied on information from Officer Aikman that there was an arrest warrant for Plaintiff.**

The law of the Tenth Circuit is that "[p]olice officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest." *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000). It is established Supreme Court precedent that "[e]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *United States v. Hensley*, 469 U.S. 221, 231 (1985) (citation omitted). As the Tenth Circuit has explained, "a police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Felders v. Malcom*, 755 F.3d 870, 882 (10th Cir. 2014) (citations omitted). The Tenth Circuit has referred to this concept as the "collective knowledge doctrine," *United States v. Wilkinson*, 633 F.3d 938, 943 (10th Cir. 2011), and the "vertical" component of the "fellow officer rule," *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012). Under "the vertical collective knowledge doctrine, an arrest or stop is justified when an officer having probable cause or reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action." *Whitley*, 680 F.3d at 1234; *see Whiteley v. Warden*, 401 U.S. 560, 564 (1971) (ruling that arresting officer reasonably relied on radio bulletin communicating that there was probable cause to arrest); *Maresca*, 804 F.3d at 1313 (ruling arresting officer's reliance on primary officer's communication of probable cause was reasonable, although primary officer actually lacked probable cause).

The facts reflect that Officer Aikman told Defendant Currey that there was an arrest warrant for Plaintiff for failure to appear in court on the charge of driving under the influence. Defendant Currey knew that Officer Aikman had spoken to dispatch about the warrant, and Defendant Currey arrested Plaintiff based upon the knowledge that Officer Aikman had ascertained about the warrant from dispatch. Defendant Currey asked Officer Aikman if the warrant was confirmed and Officer Aikman asserted that "dispatch had the warrant in hand." Defendant Currey and two other officers were in the field, and had to initiate a decision to arrest at the scene of what the CAD report labeled as a domestic disturbance, which included verbal altercation and possible property destruction. Also, Defendant Currey's decision to execute the arrest warrant at that time was accompanied by his decision to go to RECC to retrieve the warrant before taking Plaintiff to the Detention Center, which was in consideration of verifying the warrant information.

Considered in light of controlling precedent, it was not unreasonable for Defendant Currey to rely on Officer Aikman's communication that dispatch had an arrest warrant for Plaintiff. As the Tenth Circuit has explained, working in the field is often "unpredictable and fast-paced" and, therefore, the court "cannot require perfection—only reasonable behavior." *Maresca*, 804 F.3d at 1311. The standard of reasonableness is under a "totality of the circumstances" framework, based on what the officer knew at the time. *Id.* at 1310. Defendant Currey's conduct is within the bounds of the fellow-officer doctrine because of the decision-making he faced in the field upon learning of the arrest warrant. This Court finds no evidence that Defendant Currey's conclusion about probable cause "was in bad faith or unreasonable under the circumstances." *Id.* at 1312. Supreme Court and Tenth Circuit precedent establish that a primary officer does not have to convey or explain his conclusion that probable cause exists for

an arrest, and Officer Aikman was not required to do so here. Under the circumstances, Defendant Currey "reasonably and in good faith believed that probable cause to arrest existed at the moment . . . ." *Id.* at 1313.

This conclusion requires the Court to address Plaintiff's claim that "Officer Currey arrested Phillip Armijo based on his own completely unsubstantiated assumption that Phillip Armijo used John Armijo as an alias in the past." Doc. 40, at 8. Plaintiff fails to address the probable cause that existed at the scene. The facts do not indicate that Defendant Currey initiated Plaintiff's arrest because he thought Plaintiff had used an alias—Defendant Currey arrested Plaintiff because of Officer Aikman's communication that there was an arrest warrant for Plaintiff. Plaintiff fails to refute or provide case law to support his argument that Defendant Currey's reliance on Officer Aikman's assertion was unreasonable.

   **ii.**   **Defendant Currey reasonably relied on the NCIC returns from dispatch to establish probable cause for arrest.**

The analysis now shifts from applying the fellow-officer doctrine described above to an evaluation of continuing probable cause that existed upon Defendant Currey receiving the materials from RECC dispatch. Defendant Currey's decision to retrieve a copy of the arrest warrant factored into the reasonableness of his decision to initiate the arrest. When Defendant Currey received these materials, however, he determined that the arrest warrant named "John K. Armijo" and did not name "Phillip M. Armijo." Doc. 32-4, Ex. D. Defendant Currey also received two NCIC returns from the computer database—one for John K. Armijo and one for Phillip M. Armijo. He therefore had to undertake a further examination of whether there was continuing probable cause to arrest Plaintiff when he saw that the name on the arrest warrant did not match the name on Plaintiff's identification card, and in consideration of the RECC reports.

The standard for Fourth Amendment analysis is the totality-of-the-circumstances, which the Supreme Court most recently described as recognizing that "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). "A factor viewed in isolation is often more readily susceptible to an innocent explanation than one viewed as part of a totality." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Because the totality-of-the-circumstances approach "precludes this sort of divide-and-conquer analysis[,]" the court must look at the "whole picture" and cannot ignore when the "circumstances . . . certainly suggested criminal activity." *Id.* (quoting *Arvizu*, 534 U.S. at 274).

In the lead case of mistaken identity arrest, *Hill v. California*, 401 U.S. 797 (1971), the Supreme Court ruled that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." 401 U.S. at 802 (citation omitted). Because the police in *Hill* "unquestionably had probable cause to arrest[,]" the issue became whether it was reasonable for the officers to have formed the belief that the person they arrested was in fact the person they sought. *Id.* The Court in *Hill* considered a number of facts that contributed to the reasonableness of the officers' conclusion that the arrestee was the correct person: the police went to the verified address of the person they sought; the police had a verified physical description of the individual; the mailbox listed the apartment occupant as the person they sought; the arrestee matched the description; despite the arrestee's protests and identification card with a different name, "aliases and false identifications are not uncommon"; and the arrestee's credibility was questionable. *Id.* at 803–04. The Supreme Court also specifically referenced the district court's judicial notice of the fact "that those who are apprehended and are arrested many times attempt to avoid arrest by giving

false identification." *Id.* at 803 n.7. The Court explained that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.* at 804.

In Plaintiff's case, there was probable cause stemming from the arrest warrant. An arrest warrant provides probable cause for a police officer to arrest an individual, and "[u]nless a warrant is facially invalid[,] an officer has no constitutional duty to independently determine its validity." *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984). The undisputed facts indicate that the arrest warrant was taken out on John Armijo for failure to appear in the district court for a charge of driving under the influence. Doc. 32-4, Ex. D. As Plaintiff has not attacked the validity of the warrant upon which he was arrested or argued that the issuance of the warrant itself was not supported by probable cause, there was probable cause to arrest John Armijo.

Under the two-part analysis in *Hill*, the Court must then determine whether Defendant Currey's conclusion that Plaintiff was the person sought by the arrest warrant was a "reasonable response to the situation" facing Defendant Currey at that time. The arrest warrant listed 908 Osage Avenue as the residence of John K. Armijo, which is the location where Defendant Currey arrested Plaintiff, and the address listed on Plaintiff's identification card. The warrant and Plaintiff's identification card reflected the same last name, "Armijo." Defendant Currey asked Plaintiff if he had a conviction for DUI, which Plaintiff stated he did; failure to appear for DUI was the underlying charge on the arrest warrant. Defendant Currey also compared other history listed on the RECC returns, both of which indicated that John K. Armijo and Phillip M. Armijo had reports of failing to pay child support. Defendant Currey compared the picture on the return for John K. Armijo with the picture on Plaintiff's identification card, and then with Plaintiff's

physical appearance. While the Court will not weigh this evidence regarding their appearances, the Court will note that the descriptions of the brothers do not indicate an objectively unreasonable disparity in physical characteristics: the warrant lists John K. Armijo's height as 5'3", weight as 150 lbs., and hair and eye color as brown; Plaintiff's identification card lists his height as 5'5", weight as 160 lbs., and eye color as brown. Finally, the Court notes that it is immaterial whether Plaintiff protested that he was not John Armijo because even had Plaintiff protested, it would not change the outcome under *Hill*. Thus, under a totality-of-the-circumstances approach, it was reasonable for Defendant Currey to determine that Plaintiff was the person named in the arrest warrant.

Additionally, it was still reasonable for Defendant Currey to rely on Officer Aikman's communication that dispatch had an arrest warrant for Plaintiff in its possession, which formed the basis of probable cause for arrest in the first place. Defendant Currey was also entitled to rely on his training and experience that the computerized database generated two RECC returns because the names were associated as aliases. Even the Supreme Court in *Hill* noted that "aliases and false identifications are not uncommon", 401 U.S. at 803–04, which supported the officer's decision to give less weight to the arrestee's identification card. Officer Currey made a similar determination, and *Hill* supports its reasonableness.

Even considering that the first and middle names, social security numbers, and birthdays of the brothers were different, the Court will not engage in the divide-and-conquer approach that Plaintiff suggests. The Court is required to look at the entire picture, and it cannot ignore when the "circumstances . . . certainly suggested criminal activity." *Wesby*, 138 S. Ct. at 588. Under the totality-of-the-circumstances, it was reasonable for Defendant Currey to determine that probable cause for Plaintiff's arrest continued to exist although the warrant contained a different

name than Plaintiff's identification card.[15] Under *Hill*, Plaintiff has failed to show that his Fourth

Amendment rights were violated when Defendant Currey arrested him on the warrant.

### iii. Defendant Curey did not violate Plaintiff's Fourth Amendment rights by not investigating Plaintiff's identity further.

Plaintiff also asserts that Defendant Currey is not entitled to qualified immunity because

he unreasonably failed to further investigate the name discrepancy between Plaintiff's

identification card and the name on the warrant for arrest. To support this argument, Plaintiff

submits Defendant Currey's March 9, 2016 Memorandum, in which Defendant Currey stated

that "[i]n hindsight I now see I should have taken further steps to identify I had the correct

person listed on the warrant in my custody. I am truly sorry to Mr. P. Armijo for my

negligence, . . . ." Doc. 40-2, Ex. 2. Plaintiff argues that, "without even asking the suspect about

the potential alias of John Armijo," Defendant Currey "assumed an alias was being used." Doc.

40 at 10.

Plaintiff's assertion that his constitutional right to further investigation was violated is

unsuccessful under Tenth Circuit and Supreme Court law. In *Baker v. McCollan*, 443 U.S. 137

(1979), the Supreme Court explained that

> [g]iven the requirements that arrest be made only on probable cause and that one
> detained be accorded a speedy trial, we do not think a sheriff executing an arrest
> warrant is required by the Constitution to investigate independently every claim
> of innocence, whether the claim is based on mistaken identity or a defense such as
> lack of requisite intent . . . . The ultimate determination of such claims of
> innocence is placed in the hands of the judge and the jury.

443 U.S. at 145–46. The Tenth Circuit addressed the constitutional right to a post-arrest

investigation in *Romero v. Fay*, 45 F.3d 1472 (1995), in which the court ruled that mere

---

[15] Several other district courts have come to the same conclusion regarding similar circumstances, which supports the Court's reasoning here. *See, e.g.*, *Jones v. Hacker*, No. 13-cv-00444, 2015 U.S. Dist. LEXIS 34914 (E.D. Okla. Mar. 20, 2015); *Robinson v. Keita*, 20 F. Supp. 3d 1140 (D. Colo. 2014); *Jama v. City & Cnty. of Denver*, No. 08-cv-01693, 2010 U.S. Dist. LEXIS 29961 (D. Colo. Mar. 29, 2010); *Reyes v. Bd. of Cnty. Comm'rs*, No. 07-CV-2193, 2008 U.S. Dist. LEXIS 52459 (D. Kan. July 3, 2008).

negligence in an investigation does not give rise to a constitutional violation under § 1983. 45 F.3d at 1479. As the Tenth Circuit explained, "[t]he essence of Plaintiff's argument . . . is that the police assumed a duty to conduct a post-arrest investigation which they performed poorly. Although Defendants may not have conducted their post-arrest investigation as efficiently as possible, their conduct as alleged by Plaintiff simply does not exceed negligence." *Id.* In *Romero*, the Tenth Circuit ruled that the district court erred in denying qualified immunity to the defendants on the post-arrest investigation issue. *Id.*

Plaintiff has not identified any authority that requires Defendant Currey to have asked him about the discrepancy in the names. Considering the facts in the most favorable light to Plaintiff, and even assuming without deciding that Defendant Currey was negligent when he did not inquire of Plaintiff about his name or any use of aliases, this failure to "further investigate" does not rise to a constitutional violation under the law in *Baker* and *Romero*.

In conclusion, Plaintiff failed to show a Fourth Amendment constitutional violation, as required by the qualified immunity analysis. The "mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

> **2.      Defendant Currey is entitled to qualified immunity because the right that Plaintiff asserts under the Fourth Amendment was not clearly established.**

The Court now looks at the alternate prong of the qualified immunity analysis, which requires the plaintiff to demonstrate that "the unlawfulness of [the officer's] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). For the law to be clearly established in this Court, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). The Supreme Court has explained that "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (citations and quotation marks omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (citation omitted). This degree of "specificity is especially important in the Fourth Amendment context, where the Supreme Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and quotation marks omitted).

Plaintiff only points to *Hill v. California*, 401 U.S. 797 (1971), to support his contention that the law surrounding the Fourth Amendment was clearly established in these circumstances. Construed generously, Plaintiff asserts that because the rule from *Hill* is applicable to this case, then the facts in *Hill* are therefore sufficiently similar to the facts in the instant case to indicate a "clearly established" right. Doc. 40 at 9. Considered in light of the standards for "clearly established" law, Plaintiff's interpretation is inaccurate, and, furthermore, the facts in *Hill* are insufficiently analogous to satisfy this prong of the qualified immunity analysis. Moreover, the holding in *Hill* is contrary to Plaintiff's position because the Court ruled the conduct at issue was reasonable and did not violate the Fourth Amendment.

In *Hill*, the police had reliable information that included a description and address for Hill, which the police obtained from co-participants in the underlying crime, one of whom was

Hill's roommate. 401 U.S. at 803–04. An officer also checked official records on Hill, which verified Hill's association with his roommate, his address, and description. *Id.* at 799. Police arrested the person they found at the apartment based on this information; one officer testified that "[t]he door was opened and a person who fit the description exactly of Archie Hill, as I had received it . . . . answered the door." *Id.* at 799. In the instant case, there was no eye-witness or co-defendant corroboration of the description or address for Plaintiff. The circumstances surrounding Defendant Currey's determination did not involve him being given physical details of Plaintiff's appearance and then intentionally going to Plaintiff's home to arrest him for a crime without a warrant. In *Hill*, the officers formed their reasonable belief that the arrestee was Hill based on the appearance of the arrestee; Defendant Currey formed his belief that Plaintiff was the person named in the warrant based in part on the information corroborated by the RECC returns, the identification card, and the arrest warrant itself. The RECC returns contained similar criminal history information for Plaintiff and his brother, who also had the same last name. There were no RECC returns, or materials comparable to them, in *Hill*. Defendant Currey also relied on the communications from his fellow officer that there was a warrant "in hand and confirmed" by dispatch that named Plaintiff, which was certainly not the case for the warrantless arrest in *Hill*.

Thus, while both cases involve instances of arrest upon mistaken identity, the sources from which the police officers in each case gained information about probable cause, and confirmed the identity of the arrestees, are significantly different. These are factual differences that the Court cannot ignore, as *Hill* does not provide guidance on the circumstances Defendant Currey faced, including what constituted reasonable reliance on the similar information from the computer-generated database reports. Also notable is that the Supreme Court's conclusion in *Hill* is counter to Plaintiff's position now, as the Court ruled that the officers' arrest of the wrong

person was reasonable in that case. As the requirement is that the law was "sufficiently clear that every reasonable official would understand that what he is doing was unlawful", *Hill* is not sufficiently analogous to the facts in Plaintiff's case to inform a reasonable officer in Defendant Currey's position that the arrest would have, instead, violated the Fourth Amendment. *Wesby*, 138 S. Ct. at 589 (citations and quotation marks omitted).

The defendants have also put forward a number of cases that they claim "clearly establish" the law based on similar facts, but in which the rulings also run counter to Plaintiff's position. While the defendants point to a few district court cases in which the facts are similar, these cases do not clearly establish the law in the manner required by the Supreme Court and Tenth Circuit because they are district court cases. *See, e.g.*, *Jones v. Hacker*, No. 13-cv-00444, 2015 U.S. Dist. LEXIS 34914 (E.D. Okla. Mar. 20, 2015); *Robinson v. Keita*, 20 F. Supp. 3d 1140 (2014); *Jama v. City & Cnty. of Denver*, No. 08-cv-01693, 2010 U.S. Dist. LEXIS 29961 (D. Colo. Mar. 29, 2010); *Reyes v. Bd. of Cnty. Comm'rs*, No. 07-CV-2193, 2008 U.S. Dist. LEXIS 52459 (D. Kan. July 3, 2008), *aff'd,* 311 Fed. App'x 113 (10th Cir. 2009) (unpublished).

Finally, defendants point to *Baker v. McCollan*, 443 U.S. 137 (1979), as clearly established law that would have informed Defendant Currey that his conduct did not violate Plaintiff's Fourth Amendment right. While this is still not exactly the standard articulated by the Supreme Court, it is also worth noting that *Baker* dealt with a Fourteenth Amendment due process allegation, not a Fourth Amendment violation. 443 U.S. at 143. The Supreme Court in *Baker* ruled that there was no Fourteenth Amendment constitutional claim based solely on a state-tort claim of false imprisonment. *Id.* at 144. *Baker* would not have informed a reasonable officer whether his determination of the identity of the arrestee was reasonable under those circumstances. Instead, *Baker* would have informed an officer that under those circumstances, it

was not a deprivation of liberty to incarcerate the arrestee for three days after he was arrested on a warrant in his own name—which was not the determination that Defendant Currey made here. *Id.* at 146. Thus, while the facts are similar, *Baker* itself does not clearly establish the Fourth Amendment law in these circumstances, such that an officer would have understood that arresting Plaintiff clearly violated the Fourth Amendment.

In conclusion, the parties do not cite, nor did the Court locate, a Supreme Court or Tenth Circuit case establishing "precedent . . . clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

**B.    Defendants' Motion for Summary Judgment**

    **1.    Defendant Currey is entitled to summary judgment because he is protected by qualified immunity.**

When a defendant raises a claim of qualified immunity in his motion for summary judgment, "the plaintiff must show the defendant's actions violated a specific statutory or constitutional right, and the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000) (quoting *Albright*, 51 F.3d at 1534). Based on the foregoing analysis, Plaintiff has failed to satisfy either qualified immunity prong (although failure of only one would have been sufficient for summary judgment). Because Defendant Currey is entitled to qualified immunity on the § 1983 claim, he is also entitled to summary judgment on this claim.

    **2.    Defendant City of Santa Fe is entitled to summary judgment because Plaintiff fails to show municipal liability under § 1983.**

The Tenth Circuit has ruled that a municipality will not be held "liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). Thus, Plaintiff's claim that the City of Santa Fe should be held liable for Defendant Currey's conduct fails because there is no

underlying constitutional violation. *See, e.g.*, *Ellis v. Ogden City*, 589 F.3d 1099, 1104–05 (10th Cir. 2009) (dismissing claims against municipality after claims against officers were dismissed).

Furthermore, Plaintiff fails to present any evidence that the municipality is independently liable. Since *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court has held that a plaintiff alleging independent municipal liability for a violation of his or her constitutional rights pursuant to § 1983 must "identify a municipal policy or custom that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (quotation marks omitted) (citing *Monell*, 436 U.S. at 694). As the Supreme Court explained, "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Thus, courts "have consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Brown*, 520 U.S. at 403. A "challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Additionally, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. As the Tenth Circuit has summarized, the standard for pleading a violation of § 1983 requires "three elements: (1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769.

Count 3 is the sole § 1983 claim against all four original defendants in this case. It alleges that "[f]alsely arresting and falsely imprisoning Plaintiff was unreasonable" and that Plaintiff's

"constitutional rights, privileges and immunities have been violated." Doc. 1, ¶¶ 22–24. Nowhere in the evidence in the record has Plaintiff shown, or even mentioned, that there was any custom or policy attributable to the City of Santa Fe that caused a deprivation of Plaintiff's Fourth Amendment rights. Plaintiff has not demonstrated that Defendant Currey was a policymaker, or identified any decision-maker who acted with deliberate indifference involving a policy or custom that affected Plaintiff. Indeed, Plaintiff fails to present any argument for why the City of Santa Fe should legally be held accountable under controlling law. While Plaintiff alleges ordinary negligence (Count 4), *respondeat superior* liability (Count 6), and negligent hiring, training, and supervision (Count 8) against the City of Santa Fe, alleging negligence does not meet the standards required for municipal liability under § 1983.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In such a situation, the moving party is "entitled to a judgment as a matter of law . . . ." *Id.* at 323 (citation and quotation marks omitted). Plaintiff has failed to establish essential elements of his case against the City of Santa Fe because he has presented no evidence that would give rise to a claim of municipal liability under *Monell*. Thus, the Court finds that the City of Santa Fe is entitled to summary judgment on the § 1983 claim as a matter of law, as "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322.

For these reasons, the Court also finds that Defendant Currey is entitled to summary judgment on the § 1983 claim against him in his official capacity, which is tantamount to a claim

against the City of Santa Fe. *See Monell*, 436 U.S. at 694. There is no evidence that Defendant Currey was a decision-maker or policymaker in a way that would impose independent municipal liability on the City.

Finally, upon the grant of summary judgment to City Defendants for Count 3, Plaintiff's remaining state tort claims[16] are no longer supplemental to a federal question claim. 28 U.S.C. §§ 1331 (providing federal question jurisdiction), 1367(a) (providing supplemental jurisdiction). As the Tenth Circuit has explained, "[u]nder those circumstances the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice—that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), . . . ." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *see also VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1149 (10th Cir. 2017) (concluding that, upon dismissing plaintiff's federal claims, the district court should have dismissed state law claims without prejudice instead of exercising supplemental jurisdiction). This concept is codified at 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction, . . ."). As the Circuit stated in *Ball*, "[t]here are of course the best of reasons for a district court's deferral to a state court rather than retaining and disposing of state law claims itself—such factors . . . as judicial economy, fairness, convenience and comity." *Id.*

Here, compelling reasons lead the Court to conclude that the remaining claims would be best resolved in state court, as tort issues such as negligence and *respondeat superior* are ones of traditional state interest. Furthermore, Plaintiff should not be prejudiced by refiling in a state court, as he has sufficient time to refile in the proper court. *See* NMSA 37-1-8; *see also Varnell*

---

[16]     Plaintiff's remaining claims against City Defendants are Count 1 (false arrest against Defendant Currey), Count 4 (negligence), Count 6 (*respondeat superior* liability against the City of Santa Fe), and Count 8 (negligent hiring, training and supervision against the City of Santa Fe). Doc 1, filed 5/22/17.

*v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1217 (10th Cir. 2014) (explaining that, if the statute of limitations has run, § 1367(d) gives a plaintiff at least thirty days to file in state court upon district court's dismissal of pendent state law claims). Additionally, the remaining claims against City Defendants are subject to pretrial motions, which satisfies the Court that this decision will conserve judicial resources. For these reasons, the Court declines to exercise supplemental jurisdiction over the pendent state law claims and dismisses the remaining claims against City Defendants without prejudice.

Accordingly,

1. The Court **GRANTS** City Defendants' Motion for Summary Judgment as to Count 3 of Plaintiff's Complaint Based on Qualified Immunity (**Doc. 32, filed 11/22/17**).

2. Plaintiff's Cross Motion for Summary Judgment Against Officer Currey (**Doc. 40, filed 1/8/18**) is **DENIED** and Plaintiff's § 1983 claim (Count 3) against the City of Santa Fe and Defendant Currey is hereby dismissed **WITH PREJUDICE**.

3. Plaintiff's remaining claims (Counts 1, 4, 6, and 8) against City Defendants are dismissed **WITHOUT PREJUDICE.**

4. City Defendant's Motion for Summary Judgment as to Counts 1, 4, 6, and 8 of Plaintiff's Complaint (**Doc. 45, filed 1/31/18**) and Plaintiff's Cross Motion for Summary Judgment for State Torts of False Arrest [and] Negligent Supervision of Officer Currey (**Doc. 48, filed 2/23/18**) are **DENIED AS MOOT.**

**IT IS SO ORDERED**.

_____

CHIEF UNITED STATES DISTRICT JUDGE